**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. <u>21-80188-cr-RLR(s)</u>**
**26 U.S.C. § 7201**
**18 U.S.C. § 1955**
**18 U.S.C. § 371**
**18 U.S.C. § 1956(h)**
**18 U.S.C. § 1956(a)(1)(B)(i)**
**18 U.S.C. § 981(a)(1)(C)**
**18 U.S.C. § 982(a)(1)**

**UNITED STATES OF AMERICA**

**v.**

**DION DE CESARE,**
**AUNDRE AARONS,**
**JOSH PEASLEY,**
**MARK PAOLANTONIO**
**and KELLY LIZZA,**

　　　　　　**Defendants.**
_____/

FILED BY _____ **TM** _____ D.C.

**Nov 17, 2022**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

<u>**SUPERSEDING INDICTMENT**</u>

The Grand Jury charges that:

<u>**General Allegations**</u>

At times relevant to this Superseding Indictment:

1.　　**DION DE CESARE** maintained a residence at 3235 Embassy Drive, West Palm Beach, Florida, in the Southern District of Florida.

2.　　From in or around April 2008 and continuing to in or around November 2022, **DION DE CESARE** owned Whispers All Girls Staff (hereinafter "Whispers"), located at 177 Manchester Lane, West Palm Beach, Florida.

3.　　From in or around April 2008 and continuing to in or around November 2022,

**DION DE CESARE** owned "H E R E LLC," located at 177 Manchester Lane in West Palm Beach, Florida, with a mailing address of 3235 Embassy Drive, West Palm Beach, Florida.

4.      From in or around April 2008 and continuing to in or around November 2022, **DION DE CESARE** owned NXT, located at 180 North Military Trail, West Palm Beach, Florida.

5.      From in or around 2011 and continuing through at least 2017, **DION DE CESARE** and another individual (hereinafter "BUSINESS PARTNER 1") owned and operated Embassy Entertainment d/b/a Renegades ("Embassy"), a restaurant and nightclub located in West Palm Beach, Florida.

6.      DLDsportsbook.com is a website operated out of a server located in Costa Rica where users can place bets on a variety of sporting events.

7.      **AUNDRE AARONS** was employed at BB&T Bank, currently known as Truist Bank, ("BB&T Bank") located at 5737 Okeechobee Boulevard, West Palm Beach, Florida, 33417.

8.      **JOSH PEASLEY** opened at least one account on DLDsportsbook.com.

9.      **MARK PAOLANTONIO** opened at least one bank account ~~at BB&T Bank and~~ conducted financial transactions on behalf of **DION DE CESARE**.

*[handwritten: Bank Atlantic, later known as SK...]*

10.     **KELLY LIZZA** maintained at least one bank account at BB&T Bank and conducted financial transactions on behalf of **DION DE CESARE**.

### Taxes Owed

11.     **DION DE CESARE** and BUSINESS PARTNER 1 exercised control over Embassy's financial affairs including approving payments and expenditures made by the company including signing and filing payroll tax returns and controlling Embassy's bank accounts.

12.     The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

13.     The Federal Insurance Contribution Act ("FICA") required employers to withhold Medicare and Social Security taxes from their employees' wages. The Internal Revenue Code also required employers to withhold federal income taxes from their employees' wages. Collectively, these taxes are known as "trust fund taxes" because employers, who hold these taxes in trust for the United States, were required to pay them over to the IRS on behalf of their employees.

14.     Every employer must have had at least one person with the obligation to collect, account for, and pay over trust fund taxes. A person is responsible for collecting, accounting for, and paying over the trust fund taxes if he or she has the authority required to exercise significant control over the employer's financial affairs, regardless of whether the individual exercised such control in fact.  More than one person may be considered a "responsible person" for the purpose of collecting, accounting for, and paying over an employer's trust fund taxes.

15.     When a responsible person willfully failed to pay over trust fund taxes, the IRS was empowered to impose a penalty on each responsible person, individually, in an amount equal to the unpaid trust fund taxes. This penalty is known as the Trust Fund Recovery Penalty ("TFRP"). The TFRP is equal to 100% of the unpaid trust fund taxes.

16.     In addition to trust fund taxes, the Internal Revenue Code also required employers to pay an employer's share of FICA taxes to the IRS. Collectively, the combined employees' trust fund taxes and employer's share of FICA taxes are referred to as "employment taxes."

3

17.     For employers whose annual liability for trust fund taxes is greater than $1,000, responsible persons were required to report the employment taxes due for the employer on an Employer's Quarterly Federal Tax Return ("Form 941"). The Form 941 was due at the end of the month following the end of each calendar quarter and reported the total amount of wages and other compensation subject to withholding, the total amount of income tax withheld, the total amount of employment taxes due, and the total tax deposits the employer made with the IRS.

18.     As owners of Embassy, **DION DE CESARE** and BUSINESS PARTNER 1 were "responsible persons," that is, they had the corporate responsibility to collect, truthfully account for, and pay over Embassy's employment taxes to the IRS.

19.     From the third quarter of 2011 through the fourth quarter of 2013 and from the second quarter of 2015 through the fourth quarter of 2016, **DION DE CESARE** and BUSINESS PARTNER 1 as the responsible persons at Embassy failed to file Forms 941 with the IRS, and they failed to fully pay over Embassy's employment taxes to the IRS by the required deadlines.

20.     The IRS assessed TFRPs against **DION DE CESARE** and BUSINESS PARTNER 1 individually.

21.     The IRS levied bank accounts known to them to be used by **DION DE CESARE** and BUSINESS PARTNER 1 to collect tax liabilities that they refused to pay.

22.     As of the date of this Superseding Indictment, **DION DE CESARE** owes the IRS a substantial tax deficiency in both personal income taxes and trust fund recovery penalties.

### COUNT 1
**Tax Evasion**
**(26 U.S.C. § 7201)**

Beginning in or around October 2015 and continuing until at least in or around October

2019, in the Southern District of Florida and elsewhere, the defendant,

**DION DE CESARE,**

did willfully attempt to evade and defeat the payment of the following taxes and penalties due and owing by him to the United States of America: (1) trust fund recovery penalties for the quarter ending September 30, 2011, through the quarter ending December 31, 2013, and the quarter ending June 30, 2015, through the quarter ending December 31, 2016; and (2) his individual income taxes for the years 2010, 2011, 2012, 2013 and 2015, by committing, and causing to be committed, the following affirmative acts, among others:

a.      On or about December 27, 2016, as described in Count 5, **DION DE CESARE** caused **JOSH PEASLEY** to transfer by wire $6,000, which constituted illegal gambling proceeds **JOSH PEASLEY** owed to **DION DE CESARE**, into a BB&T bank account ending in 4853 titled in the name of **KELLY LIZZA.**

b.      On or about May 12, 2017, **DION DE CESARE** instructed BUSINESS PARTNER 1 via text message to move money out of a PNC Bank account ending in 3609 in the name of Embassy Entertainment, from which the IRS had previously levied funds, into a PNC Bank account ending in 5885 in the name of Median Automotive Group, another bank account he controlled, as follows:

> **DION DE CESARE**: […] the IRS went in and plucked my accounts again
>
> BUSINESS PARTNER 1: […] Should I move money from embassy to median?
>
> **DION DE CESARE**: Yes

Thereafter, in accordance with **DION DE CESARE**'s request, on or about May 12, 2017, BUSINESS PARTNER 1 transferred $25,000 from a PNC Bank account ending in 3609 titled in

the name of Embassy to a PNC Bank account ending in 5885 titled in the name of Median Automotive Group.

    c.    On or about September 24, 2018, **DION DE CESARE** instructed **AUNDRE AARONS** via text message to open a bank account for **DION DE CESARE**'s use in someone else's name, as follows:

> **DION DE CESARE**: Aundre it's Dion are you at the bank I like to open an account.
>
> **AUNDRE AARONS**: Yes I'm here. An account in your name?
>
> **DION DE CESARE**: No […]

Thereafter, on or about September 24, 2018, **AUNDRE AARONS** opened an account at BB&T Bank ending in 0366 titled in the name of **MARK PAOLANTONIO**.

    In violation of Title 26, United States Code, Section 7201.

### COUNT 2
**Operation of an Illegal Gambling Business**
**(18 U.S.C. § 1955)**

    From on or about May 20, 2015, and continuing through in or around September 2021, in Palm Beach County, in the Southern District of Florida and elsewhere, the defendants,

**DION DE CESARE,**
**JOSH PEASLEY,**
**and**
**KELLY LIZZA,**

and others known and unknown to the Grand Jury, did conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, that is, a gambling business involving sports betting, which gambling business was a violation of a law of the State of Florida, that is, Title 42 of Florida Statutes, Section 849.25 (Bookmaking), which involved five or more persons who

conducted, financed, managed, supervised, directed and owned all or part of said illegal gambling business, and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955 and 2.

## COUNT 3
### Conspiracy to Use a Facility of Interstate Commerce to Carry On
### Unlawful Activity - Gambling
### (18 U.S.C. § 371)

The allegations contained in Paragraphs 1, and 6 through 10 of the Introductory Section of this Superseding Indictment are incorporated by reference as though re-alleged in their entirety herein.

Beginning on or about May 20, 2015, and continuing until on or about February 29, 2020, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**DION DE CESARE,**
**JOSH PEASLEY,**
**and**
**KELLY LIZZA,**

did knowingly combine, conspire, confederate, and agree with each other and other persons, known and unknown to the Grand Jury, to commit an offense against the United States, that is, did knowingly use a facility in interstate and foreign commerce, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is operating an illegal gambling business, in violation of Title 18, United States Code, Section 1955, and thereafter did perform and attempt to perform an act to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3).

7

### Purpose of the Conspiracy and the Scheme and Artifice

23.     It was the purpose of the conspiracy and of the scheme and artifice for the Defendants and their co-conspirators to unlawfully enrich themselves by, among other things, operating an illegal sports gambling business, during which they used cellular telephones to manage, establish, carry one, and the facilitate the promotion, management, establishment, and carrying on of the illegal sports gambling business.

### Manner and Means

24.     The manner and means by which the Defendants and their co-conspirators sought to accomplish the purpose and the scheme and artifice included, among others, the following:

a.      From in or around 2015 and continuing through at least 2021, **DION DE CESARE** operated an illegal sports gambling business through DLDsportsbook.com where bets were "placed" or "taken," and wins and losses were created, maintained, and calculated. Betting accounts were created on the website through which players were identified and bets were placed. The person who created these accounts were called bookkeepers. Once the account was created, the bookkeeper added users/players by providing each with a unique username and password to begin placing online sports bets. A weekly gambling limit was set by the bookkeeper for each user/player. The weekly limit usually started out in or around $500 a week, until a level of trust was gained, and consistent payment patterns were observed. The bookkeeper also created users/players and set limits by logging into the master/business account and edited each user/player profile.

b.      In most cases, the bookkeeper utilized mid-level users/players, also known as "bookies," that managed groups of other users/players. These bookies were responsible for

8

collecting weekly debts from each of the other users/players beneath them for payment to the bookkeeper.  Bookies kept the business running by coordinating with the group of users/players underneath them.   Normally, bookies received a portion, also known as a "cut," of the money collected from the other users/players – oftentimes approximately 10%. This structure limited the bookkeeper's exposure because users/players only communicated and interacted with their bookies.

       c.      **AUNDRE AARONS** authorized the opening of bank accounts in his employment capacity at BB&T Bank in the name of **MARK PAOLANTONIO** and his accounts, and accounts belonging to **KELLY LIZZA**, to be used for the benefit of **DION DE CESARE**, through which illegal gambling proceeds were laundered.

       d.      **JOSH PEASLEY** placed bets for himself, opened betting accounts for others, and paid/collected gambling debts for himself and others, and laundered **DION DE CESARE's** gambling proceeds by sending gambling debt payments to third party persons and entities at **DION DE CESARE's** direction, knowing that the money was derived from illegal activity.

       e.      **MARK PAOLANTONIO** conducted financial transactions through his bank accounts at BB&T Bank on behalf of **DION DE CESARE,** knowingly that the transactions involved **DION DE CESARE'S** criminal proceeds from the illegal gambling business.

       f.      **KELLY LIZZA** assisted **DION DE CESARE's** illegal gambling business by receiving proceeds of the business and allowing her bank account at BB&T Bank to be used to launder illegal proceeds.

[handwritten: Bank Atlantic, later known as SK]

g. The Defendants communicated by cellular telephone with each other, and other known and unknown persons, to open betting accounts, take bets, pay gambling debts, and collect and launder gambling proceeds.

## Overt Acts

In furtherance of the conspiracy, and to accomplish its purpose, the Defendants committed and caused to be committed, in the Southern District of Florida, at least one or more of the following overt acts, among others:

1. On or about May 20, 2015, **DION DE CESARE** sent a text message to **JOSH PEASLEY** and informed him that the website to place bets was "Dldsportsbook…send you the totals each week."

2. On or about October 5, 2015, **DION DE CESARE** sent a text message to **JOSH PEASLEY** that read, "Josh sorry to do this to you but if you could send that money as soon as possible I would appreciate it dion…that money pays other people."

3. On or about October 31, 2016, **JOSH PEASLEY** sent a text message to **DION DE CESARE** that read, "I think my group has set the world record for losses."

4. On or about October 31, 2016, **DION DE CESARE** sent a text message to **JOSH PEASLEY** informing him that his gambling loss total was $18,277.

5. On or about January 24, 2017, **DION DE CESARE** sent **KELLY LIZZA** a text message that read, "Can you please send me over the text from (…) about the heads and tails on the New England game because we have a discrepancy with Andre."

6. On or about January 24, 2017, **KELLY LIZZA** responded, "Ok" and sent **DION DE CESARE** a screen shot via text that read, "GB won toss. It was heads…NE won

toss…It was HEADS…you guys owe me like dinner twice. I'm wearing out my vegas guys. And a happy hour."

7.      On or about November 13, 2018, **DION DE CESARE** sent **JOSH PEASLEY** a text message that read, "Let me know when you want me to set up Joshua one Josh two Joshua three and passwords so you can make a percentage on the net loss".

8.      On November 26, 2019, **DION DE CESARE** sent multiple text messages to GAMBLER 1 and arranged to meet up later that day for the purpose of GAMBLER 1 paying **DION DE CESARE** a gambling debt.

9.      On or about February 3, 2020, **DION DE CESARE** received a text message from GAMBLER 2 requesting that **DION DE CESARE** add additional gamblers under GAMBLER 2's online gambling account at DLDsportsbook.com with usernames of "Ag02" and "Yo2020" with maximum betting limits of $1000 and $200, respectively.

10.     On or about February 19, 2020, **DION DE CESARE** called GAMBLER 3 and arranged to meet him the following day for the purpose of picking up $1,371 in gambling debts.

All in violation of Title 18, United States Code, Section 371.

**COUNT 4**
**Conspiracy to Launder Money**
**(18 U.S.C. § 1956(h))**

In or around December 2017, the exact date being unknown to the Grand Jury, and continuing through in or around August 2021, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

11

**DION DE CESARE,**
**AUNDRE AARONS,**
**JOSH PEASLEY,**
**MARK PAOLANTONIO,**
**and**
**KELLY LIZZA,**

did knowingly combine, conspire, confederate, and agree with each other and other persons, unknown to the Grand Jury, to commit an offense against the United States, in violation of Title 18, United States Code, Section 1956, that is, to knowingly conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of  Title 18, United States Code, Section 1956(a)(1)(B)(i).

It is further alleged that the specific specified unlawful activity is the felonious use of a facility of interstate commerce to promote, manage, establish, carry on, or facilitate any unlawful activity; in violation of Title 18, United States Code, Section 1952, punishable under the laws of the United States.

It is further alleged that the specific specified unlawful activity is the felonious operation of an illegal gambling business, in violation of Title 18, United States Code, Section 1955, punishable under the laws of the United States.

All in violation of Title 18, United States Code, Section 1956(h).

12

<u>COUNTS 5-17</u>
**Money Laundering**
**(18 U.S.C. §§ 1956(a)(1)(B)(i) and 2)**

On or about the dates set forth below as to each count, in Palm Beach County, in the

Southern District of Florida, and elsewhere, the defendants, identified below, did knowingly

conduct a financial transaction affecting interstate and foreign commerce, which transaction

involved the proceeds of specified unlawful activity, knowing that the property involved in the

financial transaction represented the proceeds of some form of unlawful activity, and knowing that

the transaction was designed, in whole and in part, to conceal and disguise the nature, location,

source, ownership and control of the proceeds of specified unlawful activity, as set forth below:

| Count | Approx. Date of Financial Transaction | Defendant | Amount | Financial Transaction |
|---|---|---|---|---|
| 5 | December 27, 2016 | DION DE CESARE, JOSH PEASLEY, and KELLY LIZZA | $6,000 | Wire transfer deposited into BB&T bank account ending in 4853 |
| 6 | January 11, 2017 | DION DE CESARE, JOSH PEASLEY, and KELLY LIZZA | $3,000 | Wire transfer deposited into BB&T bank account ending in 4853 |
| 7 | January 31, 2017 | DION DE CESARE, JOSH PEASLEY, and KELLY LIZZA | $4,950 | Wire transfer deposited into BB&T bank account ending in 4853 |
| 8 | December 26, 2017 | DION DE CESARE and JOSH PEASLEY | $4,000 | Check #135 dated December 26, 2017, paid to the order of Lakeshore HOA delivered to Dion De Cesare |
| 9 | January 22, 2018 | DION DE CESARE and JOSH PEASLEY | $2,775 | Check #269 paid to the order of Presidential Estates delivered to Dion De Cesare |

| Count | Approx. Date of Financial Transaction | Defendant | Amount | Financial Transaction |
|---|---|---|---|---|
| 10 | October 1, 2018 | DION DE CESARE, JOSH PEASLEY, MARK PAOLANTONIO, and AUNDRE AARONS | $2,500 | Check #139 dated September 18, 2018, paid to the order of Mark Paolantonio deposited into BB&T account ending in 0366 |
| 11 | November 5, 2018 | DION DE CESARE, JOSH PEASLEY, and MARK PAOLANTONIO | $2,500 | Check #113 dated October 3, 2018, paid to the order of Mark Paolantonio deposited into BB&T account ending in 0366 |
| 12 | December 3, 2018 | DION DE CESARE, JOSH PEASLEY, and MARK PAOLANTONIO | $2,500 | Check #150 dated October 25, 2018, paid to the order of Mark Paolantonio deposited into BB&T account ending in 0366 |
| 13 | September 19, 2019 | DION DE CESARE and JOSH PEASLEY | $3,500 | Check #304 paid to the order of Presidential Golf View deposited into Bank of America account ending in 1437 |
| 14 | October 10, 2019 | DION DE CESARE and JOSH PEASLEY | $4,500 | Check #306 paid to the order of Presidential Golf View deposited into Bank of America account ending in 1437 |
| 15 | October 10, 2019 | DION DE CESARE and JOSH PEASLEY | $3,000 | Check #225 paid to the order of Presidential Golf View deposited into Bank of America account ending in 1437 |

| Count | Approx. Date of Financial Transaction | Defendant | Amount | Financial Transaction |
|-------|------------------|-----------|--------|----------------------|
| 16 | October 31, 2019 | DION DE CESARE and JOSH PEASLEY | $3,000 | Check #311 paid to the order of Presidential Golf View deposited into Bank of America account ending in 1437 |
| 17 | November 6, 2019 | DION DE CESARE, JOSH PEASLEY, and AUNDRE AARONS | $4,000 | Check #228 paid to the order of Aundre Aarons deposited into USAA bank account ending in 0036 |

It is further alleged that the specific specified unlawful activity is the felonious operation of an illegal gambling business, in violation of Title 18, United States Code, Section 1955, punishable under the laws of the United States.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

### COUNT 18
**Conspiracy to Use a Facility of Interstate Commerce to Carry On Unlawful Activity - Prostitution**
**(18 U.S.C. § 371)**

The allegations contained in Paragraphs 1 through 5 of the Introductory Section of this Superseding Indictment are incorporated by reference as though re-alleged in their entirety herein.

From on or about September 18, 2015, and continuing until on or about February 29, 2020, in Palm Beach County, in the Southern District of Florida and elsewhere, the defendant,

**DION DE CESARE,**

did knowingly combine, conspire, confederate, and agree with other persons, known and unknown to the Grand Jury, to commit an offense against the United States, that is, did knowingly use a facility in interstate and foreign commerce, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of an unlawful

activity; to wit, prostitution, in violation of Fla. Stat. § 796.07, and thereafter did perform and attempt to perform an act to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3).

### Purpose of the Conspiracy and the Scheme and Artifice

25.     It was the purpose of the conspiracy and of the scheme and artifice of the Defendant and his co-conspirators to unlawfully enrich themselves by, using Whispers and NXT to host and run an illegal prostitution business, during which the Defendant and his co-conspirators used cellular telephones to promote, manage, establish, carry on, facilitate, and collect proceeds from illegal prostitution services that were taking place in those commercial establishments.

### Manner and Means

26.     The manner and means by which the Defendant and his co-conspirators sought to accomplish the purpose of the conspiracy and the scheme and artifice include, among others, the following:

a.   From in or around April 2008 and continuing until at least on or about February 29, 2020, Whispers and NXT illegally operated as houses of prostitution from which **DION DE CESARE** earned income.

b.   From in or around April 2008 and continuing until at least on or about February 29, 2020, Whispers and NXT employed many individuals, including WOMAN 1, WOMAN 2, WOMAN 3, WOMAN 4, MALE 1, and MALE 2.

c.   From on or about September 18, 2015, and continuing until on or about February 29, 2020, **DION DE CESARE** made and received phone calls and text messages to and

from his cellular telephone to employees of Whispers and NXT to arrange for him to replenish cash into an ATM machine located on the premises for customers to use to pay for prostitution services.

      d. From on or about September 18, 2015, and continuing until on or about February 29, 2020, **DION DE CESARE** used his cellular telephone to pay utility bills for Whispers and NXT to maintain the operation of the prostitution business.

      e. From on or about September 18, 2015, and continuing until on or about February 29, 2020, **DION DE CESARE** used his cellular telephone to speak to associates who worked at Whispers and NXT about the hiring of prostitutes for those businesses.

      f. From on or about September 18, 2015, and continuing until on or about February 29, 2020, **DION DE CESARE** used his cellular telephone to arrange for the installation of security cameras and televisions located inside Whispers and NXT to maintain the operation of the business.

      g. From on or about September 18, 2015, and continuing until on or about February 29, 2020, **DION DE CESARE** used his cellular telephone to arrange to pick up prostitution proceeds from employees of Whispers and NXT so that he could use that money to pay the utility bills for the businesses, replenish cash in the ATM located on the premises, and defray other costs associated with the businesses to facilitate the operation of the prostitution activities.

## Overt Acts

      In furtherance of the conspiracy, and to accomplish its purpose, the defendant committed and caused to be committed, in the Southern District of Florida, at least one or more of the

following overt acts, among others:

1.      On or about October 7, 2015, **DION DE CESARE** sent a text message to WOMAN 1 that read, "The girls are claiming that there's no money in the atm."

2.      On or about December 3, 2016, **DION DE CESARE** received a text message from WOMAN 2 that read, "Hi its  (. . .) fr southern blv. The atm is out of $."

3.      On or about January 6, 2017, **DION DE CESARE** sent a text message that read, "Can you bring those to an nXT and put those up in the corners please."

4.      On or about September 13, 2018, **DION DE CESARE** sent a text message to MALE 1 that read, "I told (. . .) they have to have a parking guy they're outside they did not have one there last night they guy called out I want no parking in front of whispers and I want have a bouncer there too."

5.      On or about November 12, 2019, **DION DE CESARE** called MALE 2 and asked him to "leave it all for him by the door."

6.      On or about November 20, 2019, **DION DE CESARE** called WOMAN 3 and asked her if the girl who WOMAN 3 described as "brand new, amateur, super cute, and just turned 18" wanted to "work at the shop."

7.      On or about February 17, 2020, **DION DE CESARE** called MALE 2 and asked him to "bring me another $1,000."

8.      On or about February 22, 2020, **DION DE CESARE** received a phone call from MALE 1 and asked if **DION DE CESARE** could come to MALE 1's house and "grab that thousand tonight."

9.      On or about February 25, 2020, **DION DE CESARE** received a phone call from

18

WOMAN 4 and agreed to come to Whispers to provide the club staff with money so that the female prostitutes can provide change to the customers.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS

1.      The allegations of this Superseding Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which any of the defendants, **DION DE CESARE, AUNDRE AARONS, JOSH PEASLEY, MARK PAOLANTONIO, and KELLY LIZZA**, have an interest.

2.      Upon conviction of a violation of Title 18, United States Code, Section 1955, as alleged in this Superseding Indictment, the defendant shall forfeit to the United States any property, including money, used in such violation, pursuant to Title 18, United States Code, Section 1955(d).

3.      Upon conviction of a violation of Title 18, United States Code, Section 1956, as alleged in this Superseding Indictment, the defendant shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4.      Upon conviction of a violation of Title 18, United States Code, Sections 1952 or 1955, or a conspiracy to commit such violations, as alleged in this Superseding Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such violation, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

5.    The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, the following:

      a.  Real property located at 3235 Embassy Drive, West Palm Beach, FL 33401;

      b.  Real property located at 180 N Military Trail, West Palm Beach, FL 33415;

      c.  Real property located at 177 Manchester Lane, West Palm Beach, FL 33406;

      d.  Real property located at 1900 N Congress Avenue, Apt. 401, West Palm Beach, FL 33401;

      e.  Real property located at 1850 N Congress Avenue, Apt. 301, West Palm Beach, FL 33401;

      f.  Real property located at 1950 N Congress Avenue, Apt. 201, West Palm Beach, FL 33401;

      g.  Real property located at 2050 N Congress Avenue, Apt. 205, West Palm Beach, FL 33401;

      h.  Real property located at 2050 N Congress Avenue, Apt. 404, West Palm Beach, FL 33401;

      i.  Real property located at 1043 Big Torch Street, Riviera Beach, FL 33407; and

      j.  A black Chevrolet Silverado 1500 LR Crew Cab four door truck, Vehicle Identification Number 3GCPCREC8JG162002.

6.    If any of the property subject to forfeiture, as a result of any act or omission of the defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be

divided without difficulty, the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p). Such substitute property includes, but is not limited to, the following:

    a. Real property located at 1118 25th Street, Unit 18, West Palm Beach, FL 33407; and

    b. Real property located at 2800 N. Flagler Drive, Apt. 1006, West Palm Beach, Fl 33407.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), and 1955(d), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

_____
MARK DISPOTO
ASSISTANT UNITED STATES ATTORNEY

_____
FRANCESCA BARTOLOMEY
TRIAL ATTORNEY
UNITED STATES DEPARTMENT OF JUSTICE, TAX DIVISION

21

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

**CASE NO.: 21-80188-Cr-RLR(s)**

v.

DION DE CESARE, AUNDRE AARONS,
JOSH PEASLEY, MARK PAOLANTONIO,
and KELLY LIZZA,                                    /

**Defendants.**

### CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division** (select one)

☐ Miami ☐ Key West ☐ FTP
☐ FTL ☑ WPB

New Defendant(s) (Yes or No) **No**
Number of New Defendants _____
Total number of New Counts **3**

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) **No**
   List language and/or dialect: _____

4. This case will take **5-6** days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                         (Check only one)
   I    ☐ 0 to 5 days                       ☐ Petty
   II   ☑ 6 to 10 days                      ☐ Minor
   III  ☐ 11 to 20 days                     ☐ Misdemeanor
   IV   ☐ 21 to 60 days                     ☑ Felony
   V    ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) **No**
   If yes, Judge _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) **No**
   If yes, Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) **No**
   If yes, Judge _____ Case No. _____

9. Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) **No**

13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) **No**

14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) **No**

By: _____

MARK DISPOTO
Assistant United States Attorney
Court ID No.        Court Id. No. A5501143

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name:** **DION DE CESARE**

**Count 1:**

Tax Evasion

Title 26, United States Code, Section 7201

**\*Max. Penalty:**     5 years' imprisonment; 3 years supervised release; $250,000 fine

**Count 2:**

Operating an Illegal Gambling Business

Title 18, United States Code, Section 1955

**\*Max. Penalty:**     5 years' imprisonment; 3 years supervised release; $250,000 fine

**Count 3:**

Conspiracy to Use Communication Facility to Carry on Gambling

Title 18, United States Code, Section 371

**\*Max. Penalty:**     5 years' imprisonment; 3 years supervised release; $250,000 fine

**Count 4:**

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**     20 years' imprisonment; 3 years supervised release; fine of up to $500,000
or twice the value of the property involved in the transaction, whichever is
greater

**Counts 5-17**:

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(B)(i) and 2

**\*Max. Penalty:**     20 years' imprisonment; 3 years supervised release; fine of up to $500,000 or twice the value of the property involved in the transaction, whichever is greater

**Count 18:**

Conspiracy to Use Communication Facility to Carry On Prostitution

Title 18, United States Code, Section 371

**\*Max. Penalty:**     5 years' imprisonment; 3 years supervised release; $250,000 fine

**\*Refers only to possible term of incarceration, fine, and supervised release term, but does not include possible restitution, special assessments, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**:   **AUNDRE AARONS**

**Count 4**:

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**   20 years' imprisonment; 3 years supervised release; fine of up to $500,000 or twice the value of the property involved in the transaction, whichever is greater

**Counts 10 & 17**:

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(B)(i) and 2

**\*Max. Penalty:**   20 years' imprisonment; 3 years supervised release; fine of up to $500,000 or twice the value of the property involved in the transaction, whichever is greater

**\*Refers only to possible term of incarceration, fine, and supervised release term, but does not include possible restitution, special assessments, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**:  **JOSH PEASLEY**

**Count 2:**

       Operating an Illegal Gambling Business

       Title 18, United States Code, Section 1955

**\*Max. Penalty:**     5 years' imprisonment; 3 years supervised release; $250,000 fine

**Count 3:**

       Conspiracy to Use Communication Facility to Carry On Gambling

       Title 18, United States Code, Section 371

**\*Max. Penalty:**     5 years' imprisonment; 3 years supervised release; $250,000 fine

**Count 4:**

       Conspiracy to Commit Money Laundering

       Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**     20 years' imprisonment; 3 years supervised release; fine of up to $500,000 or twice the value of the property involved in the transaction, whichever is greater

**Counts 5-17**:

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(B)(i) and 2

**\*Max. Penalty:**   20 years' imprisonment; 3 years supervised release; fine of up to $500,000 or twice the value of the property involved in the transaction, whichever is greater

**\*Refers only to possible term of incarceration, fine, and supervised release term, but does not include possible restitution, special assessments, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:  **MARK PAOLANTONIO**

**Count 4**:

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**   20 years' imprisonment; 3 years supervised release; fine of up to $500,000 or twice the value of the property involved in the transaction, whichever is greater

**Counts 10-12**:

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(B)(i)

**\*Max. Penalty:**   20 years' imprisonment; 3 years supervised release; fine of up to $500,000 or twice the value of the property involved in the transaction, whichever is greater

**\*Refers only to possible term of incarceration, fine, and supervised release term, but does not include possible restitution, special assessments, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**:  **KELLY LIZZA**

**Count 2:**

Operating an Illegal Gambling Business

Title 18, United States Code, Section 1955

**\*Max. Penalty:**      5 years' imprisonment; 3 years supervised release; $250,000 fine

**Count 3:**

Conspiracy to Use Communication Facility to Carry On Gambling

Title 18, United States Code, Section 371

**\*Max. Penalty:**      5 years' imprisonment; 3 years supervised release; $250,000 fine

**Count 4:**

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**      20 years' imprisonment; 3 years supervised release; fine of up to $500,000
or twice the value of the property involved in the transaction, whichever is
*greater*

**Counts 5-7**:

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(B)(i) and 2

**\*Max. Penalty:**    20 years' imprisonment; 3 years supervised release; fine of up to $500,000 or twice the value of the property involved in the transaction, whichever is greater

**\*Refers only to possible term of incarceration, fine, and supervised release term, but does not include possible restitution, special assessments, or forfeitures that may be applicable.**